UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

SARAH PICKENS, *an Individual*, JAMIE RICH, *an Individual*, TIANNA SCHAEFFER, *an Individual*, CAMERON JOHNSON, *an Individual*, COREY KIYABU, *an Individual*, ANDREA HARGIS, *an Individual*, CAYLIN SISLER, *an Individual*, CHRISTINA WILLIAMS, *an Individual*, LENA ABBOTT, *an Individual*, CONNIE CIRCLE, *an Individual*, DAYMON SMITH, *an Individual*, CRYSTAL SHEFFIELD, *an Individual*,

Plaintiffs,

v.

PEACEHEALTH, *a corporation*,

Defendant.

Case No. 6:23-cv-01718-MTK
Case No. 6:23-cv-01460-MTK

**OPINION AND ORDER**

---

LEILA NICHOLS, *an Individual*,

Plaintiff,

v.

PEACEHEALTH, *a corporation*,

Defendant.

---

**KASUBHAI,** United States District Judge:

Plaintiffs filed these actions against their employer PeaceHealth, alleging federal and state claims of employment discrimination. Before the Court is Defendant's Phase One Motion for Summary Judgment. 6:23-cv-01718-MTK, ECF No. 124; 6:23-cv-01460-MTK, ECF No. 50. For the reasons below, Defendant's motion is granted.

## BACKGROUND

### I. Factual Background

Defendant is a not-for-profit Catholic healthcare system with approximately 16,250 employees in medical centers, hospitals, and clinics across Alaska, Washington, and Oregon. Le Decl. ¶ 3, ECF No. 126. Its mission is to promote personal and community health through safe and compassionate care. Le Decl. ¶ 5, Ex. 1.

In early 2020, the SARS-CoV-2 virus, and the COVID-19 infection it causes, began spreading in Oregon, and PeaceHealth facilities saw "significant inflows of patients infected with the virus, making its hospitals and clinics especially vulnerable to the spread of the virus." Kroll Decl. ¶ 5, ECF No. 5; Koekkoek Decl. ¶¶ 4-5, ECF No. 128. Defendant mitigated exposure risks using screening, testing, masking, other forms of personal protective equipment, and social distancing. Le Decl. ¶ 7; Kroll Decl. ¶ 6. Once COVID-19 vaccines became available in December 2020, Defendant encouraged its employees to get vaccinated. Le Decl. ¶ 8; Kroll Decl. ¶ 8.

In the summer of 2021, a more transmissible and deadly Delta variant of the virus impacted Oregon communities and hospitals. Koekkoek Decl. ¶ 10. The number of COVID-19 cases increased by 300% nationwide. Koekkoek Decl. ¶ 43, Ex. 16 at 1. Data showed that the Delta variant was more than twice as transmissible as the original strain. *Id.* On August 3, 2021, Defendant announced it would require all employees to be fully vaccinated against COVID-19

by September 1, 2021, if able, and to show proof of COVID-19 vaccination or submit a medical or religious exception on or before August 31, 2021. Koekkoek Decl. ¶ 34; Le Decl. ¶ 11, Ex. 3 at 2.

In August 2021, PeaceHealth's Infection Prevention team conducted an internal epidemiological study which found that "[p]atients were 11.6 times more likely to get COVID-19 from an unvaccinated caregiver as compared to a vaccinated caregiver." Kroll Decl. ¶ 28. Following that report, PeaceHealth considered potential accommodation options for two categories of caregivers: (1) those with patient-facing roles or who provide direct patient care; and (2) those who interact with other caregivers in patient-facing or direct care roles. Koekkoek Decl. ¶ 53. Based on the data and information available to it at the time, PeaceHealth decided that methods besides vaccination—including masking, testing, social distancing, restrictions on visitation, and hand hygiene protocols—were not sufficient to protect PeaceHealth's vulnerable patient populations, regardless of whether the caregiver was in a patient-facing role or worked with other caregivers in a patient-facing role. Koekkoek Decl. ¶¶ 54-59. PeaceHealth therefore concluded that "the only safe and reasonable accommodation for the hundreds of unvaccinated caregivers with approved exceptions who could not work fully remotely was leave." Koekkoek Decl. ¶ 61.

Defendant established a committee to review religious exception requests and established a process for evaluating such requests. Le Decl. ¶ 20. When Defendant approved a request for religious exception, the employee's HR partner or supervisor initiated an interview with the employee. Le Decl. ¶ 25. Because PeaceHealth "already determined that contact between unvaccinated caregivers and patients, caregivers, or other community members in PeaceHealth facilities posed an unacceptable health and safety risk, the question to be determined during the

interactive process was whether the caregiver could perform the essential functions of their position 100% remotely." *Id.* Defendant placed excepted employees who could not work fully remotely on unpaid leave, permitting use of remaining PTO and continuing their health benefits coverage through the later of November 30, 2021, or the end of the month in which they exhausted PTO. Le Decl. ¶¶ 26, 28.

Nine Plaintiffs—Abbott, Circle, Hargis, Kiyabu, Nichols, Schaeffer, Sheffield, Smith, and Williams—worked in direct patient care roles with job duties that "required them to have frequent in-person, face-to-face, physical contact with patients in order to provide medical care to them." Le Decl. ¶ 34. The remaining four Plaintiffs—Johnson, Pickens, Rich, and Sisler—had roles "which did not involve direct patient care but required regular close contact with patients and other caregivers in order to perform their job functions." Le Decl. ¶ 47. Except for Plaintiff Pickens, each Plaintiff admits that they "could not perform fully remotely all of the job duties of the job position [they] held at PeaceHealth at the time its COV[I]D-19 Vaccination Policy took effect." Riggs Decl. Exs. 2-14. Each Plaintiff requested a religious exception to Defendant's vaccination requirement. Le Decl. ¶¶ 38-52. PeaceHealth approved each of these Plaintiffs' exceptions and placed them on unpaid administrative leave. *Id.* Each Plaintiff asserts that PeaceHealth engaged in little or no interactive process with them regarding potential accommodations before they were placed on leave. *See generally* Plaintiffs' Declarations, ECF Nos. 133-144.

## II. Procedural Background

Plaintiff Nichols filed her complaint on October 5, 2023. Plaintiffs' counsel filed the *Pickens* action initially on behalf of three plaintiffs on November 20, 2023. On March 1, 2024, Plaintiffs' counsel filed an Amended Complaint that asserted claims on behalf of another 21 plaintiffs. ECF No. 12. Defendant filed a motion for limited consolidation of several cases,

which the Court granted in part on May 1, 2025. ECF No. 57. In that order, the Court consolidated the *Nichols* and *Pickens* matters "for the limited purpose of Phase One discovery and dispositive motions." ECF No. 57 at 3. The consolidation contemplated limited phased discovery followed by a summary judgment motion by Defendant on the issues of:

> (1) whether leave was a reasonable accommodation for unvaccinated employees with approved religious exceptions who could not perform their duties 100% remotely; (2) whether allowing such employees to continue to work unvaccinated would create an undue hardship or direct threat; and (3) whether there is any genuine fact dispute as to whether each Plaintiff could perform 100% remotely the job duties for the position they held as of September 1, 2021.

*Id.* at 6-7. Defendant was also authorized to move for summary judgment "on the disparate-impact claim in *Pickens* on the related issue of whether its COVID-19 vaccine policy was job related and consistent with business necessity." *Id.* at 7.

## STANDARD

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec. Service, Inc.*, 809 F.2d at 630.

## DISCUSSION

Defendant moves for summary judgment on all Plaintiffs' claims of religious discrimination based on failure to accommodate and disparate impact theories under federal and state law. The Court begins by addressing Plaintiffs' failure to accommodate claims before turning to disparate impact.

### I. Failure to Accommodate

Plaintiffs assert federal and state religious discrimination claims, arguing that Defendant failed to accommodate their religious beliefs that were in conflict with Defendant's COVID-19 vaccination policy. Under Title VII, "[t]o establish religious discrimination on the basis of a failure-to-accommodate theory, [the plaintiff] must first set forth a prima facie case that (1) he had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) he informed his employer of the belief and conflict; and (3) the employer discharged, threatened, or otherwise subjected him to an adverse employment action because of his inability to fulfill the job requirement." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004). If established, the burden then shifts to the defendant to show that it "initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Id.* Courts construe Oregon's statutory counterpart, Or. Rev. Stat. § 659.030, as identical to Title VII. *Heller v. EBB Auto Co.*, 8 F.3d

1433, n.2 1437 (9th Cir. 1993). The Court therefore analyzes the state and federal claims under the same legal standards.

Defendant moves for summary judgment in its favor based on its affirmative defense of undue hardship. Defendant argues that even assuming Plaintiffs could establish a prima facie case of religious discrimination based on a failure to accommodate, Defendant is entitled to summary judgment because there is no genuine issue of fact that Defendant reasonably accommodated Plaintiffs with leave, and any other accommodation would have caused Defendant undue hardship.

**A. Undue Hardship Standard**

In *Groff v. DeJoy*, 600 U.S. 447 (2023), the Supreme Court clarified that under Title VII, a defendant shows '"undue hardship' when a burden is substantial in the overall context of an employer's business." *Id.* at 468. Whether a burden is substantial is a fact-specific inquiry that should be resolved in a "common-sense manner." *Id.* at 471. Under the *Groff* standard, "courts must apply the test in a manner that takes into account all relevant factors in the case at hand." *Id.* at 470. For example, courts may consider "the particular accommodations at issue and their practical impact in light of the nature, size, and operating cost of an employer." *Id.* (citation to record and alterations omitted). Consistent with this contextualized and common-sense approach, when conducting an undue hardship analysis, the Court finds it appropriate to consider the following factors: (1) the information available at the time the defendant made its accommodation decision; (2) economic and non-economic costs of the accommodation; and (3)

the cumulative or aggregate effects of an accommodation requested by multiple, similarly situated employees.[1]

Pre-*Groff* EEOC guidance on the undue hardship standard remains instructive. *Id.* at 471 (rejecting full adoption of EEOC's pre-*Groff* interpretation of undue hardship but explaining a "good deal of the EEOC's guidance in this area is sensible and will, in all likelihood, be unaffected by" the Court's clarifying decision). In evaluating undue hardship in the context of COVID-19 vaccinations, the EEOC provides sensible and relevant guidance consistent with *Groff*:

> Considerations relevant to undue hardship can include, among other things, the proportion of employees in the workplace who already are partially or fully vaccinated against COVID-19 and the extent of employee contact with non-employees, whose vaccination status could be unknown or who may be ineligible for the vaccine. (§ K.12, Updated May 28, 2021).
>
> Costs to be considered include not only direct monetary costs but also the burden on the conduct of the employer's business—including, in this instance, the risk of the spread of COVID-19 to other employees or to the public. . . . An employer cannot rely on speculative or hypothetical hardship when faced with an employee's religious objection but, rather, should rely on objective information. Certain common and relevant considerations during the COVID-19 pandemic include, for example, whether the employee requesting a religious accommodation to a COVID-19 vaccination requirement works outdoors or indoors, works in a solitary or group work setting, or has close contact with other employees or members of the public (especially medically vulnerable individuals). Another relevant consideration is the number of employees who are seeking a similar accommodation, i.e., the cumulative cost or burden on the employer. (§ L.3, Updated March 1, 2022).

*What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws,* EEOC (last visited September 25, 2024), https://www.eeoc.gov/wysk/what-you-should-

---

[1] For a thorough and well-reasoned explanation of these three factors and their relation to *Groff*, *see Lavelle-Hayden v. Legacy Health*, No. 3:22-CV-01752-IM, 2024 WL 3822712, at *8-10 (D. Or. Aug. 14, 2024).

know-about-covid-19-and-adarehabilitation-act-and-other-eeo-laws [https://perma.cc/73RS-7L62].

Specific to the COVID-19 vaccination issue, the Ninth Circuit has endorsed considering three categories of undue hardship factors: "(1) health and safety costs, (2) operational burdens, and (3) financial burdens." *Petersen v. Snohomish Reg'l Fire & Rescue*, 150 F.4th 1211, 1218 (9th Cir. 2025). "[C]osts need not be realized prior to raising an undue-hardship defense . . . A 'risk of undue hardship' will suffice—provided it is 'realistic' and 'not 'merely conceivable or hypothetical.'" *Williams v. Legacy Health*, 174 F.4th 1201, 1206 (9th Cir. 2026) (quoting *Petersen*, 150 F.4th at 1222). Undue hardship is a "complete defense to a Title VII claim even if there was 'no attempt at accommodation' at all." *Id*. at 1207 (quoting *E.E.O.C. v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610, 615 n. 7 (9th Cir. 1988)).

**B. Undue Hardship Application**

Defendant asserts that for employees who could not work fully remotely, any accommodation other than leave would have created undue hardship by significantly increasing health and safety risks to its employees and patients. Plaintiffs contend that there is a genuine issue of fact as to whether Defendant engaged in a "meaningful, individualized interactive process" and considered reasonable accommodations. Pls.' Resp. 8-12.

Defendant's motion is supported by the declarations of Dr. Koekkoek, Defendant's Chief Physician and Clinical Executive; Catherine Kroll, Defendant's System Director of Infection Prevention; and Caroline Le, Defendant's Program Director for HR Transformation & Implementation. Koekkoek Decl. ¶ 2, Kroll Decl. ¶ 2, Le Decl. ¶ 2. This Court has already summarized and analyzed this virtually identical record in four other cases brought by Defendant's employees: *Sano v. PeaceHealth*, Inc., No. 6:22-CV-01210-MTK, 2024 WL 4979429 (D. Or. Dec. 4, 2024); *Goff v. PeaceHealth*, No. 6:22-CV-01991-MTK, 2024 WL

4979432 (D. Or. Dec. 4, 2024); *Parsons v. PeaceHealth*, No. 6:22-CV-01246-MTK, 2024 WL 4979430 (D. Or. Dec. 4, 2024); *Parker v. PeaceHealth*, No. 6:23-CV-00450-MTK, 2024 WL 4993472 (D. Or. Dec. 5, 2024). As explained in those cases, Defendant relied on guidance from the CDC and OHA, numerous scientific studies, and Defendant's own internal epidemiological study to determine that vaccination was the single most important method of protection against COVID-19. Defendant affirmatively considered whether other methods such as masking, testing, social distancing, or additional hygiene protocols were sufficient, and concluded they were not. Based on Defendant's evidence, the Court found that "there is no genuine dispute of material fact that any accommodation other than leave would have posed an undue hardship on Defendant." *Sano*, 2024 WL 4979429, at *9; *Goff*, 2024 WL 4979432, at *9; *Parsons*, 2024 WL 4979430, at *9; *Parker*, 2024 WL 4993472, at *9.[2] The Court has reviewed the record in this case and sees no reason to depart from its evaluation of the similar evidence in the cases discussed above. There are no facts particular to these Plaintiffs that warrant a different outcome, and Plaintiffs present no expert testimony of their own on the issue of undue hardship.

Plaintiffs' principal argument in opposition to summary judgment is that Defendant failed to engage in a meaningful interactive process and conduct an individualized assessment of their

---

[2] Likewise, other judges in this district have evaluated PeaceHealth's decision to place certain classes of unvaccinated employees on leave and granted summary judgment in PeaceHealth's favor on the basis of undue hardship. *See, e.g., Hunter v. Peacehealth*, 2026 WL 1509007, at *19 (D. Or. May 31, 2026) ("on this record, there is no issue of material fact that accommodating Plaintiff—and hundreds of other unvaccinated coworkers—with N95 respirators and 'regular testing' in lieu of vaccination would have imposed undue hardship under Title VII and Oregon law."); *Berra v. PeaceHealth*, 2026 WL 1509010, at *20 (D. Or. May 31, 2026) (same); *Salinas Navarrete v. Peacehealth*, 2026 WL 1509008, at *19 (D. Or. May 31, 2026) (same); *Trimmier v. Peacehealth*, 2026 WL 1509009, at *21 (D. Or. May 31, 2026) (same); *Buss v. PeaceHealth*, 2026 WL 1256912, at *15 (D. Or. May 7, 2026) ("no reasonable juror could conclude that PeaceHealth could have reasonably accommodated Plaintiff and the hundreds of other similarly situated unvaccinated employees without undue hardship.")

job duties. In other words, Plaintiffs take issue with Defendant's categorical approach to employees whose job duties could not be completed fully remotely. The Ninth Circuit recently considered and rejected Plaintiffs' same argument on a virtually identical record, explaining:

> [The plaintiff] argues that reversal is warranted because PeaceHealth did not make an individualized assessment of his accommodation request but rather applied a categorical rule that no employee with job duties that required in-person work could be unvaccinated. This argument is foreclosed by *Williams*, which explains that if an employer decides that "no accommodation is possible without undue hardship, then consideration of a particular accommodation is an exercise in futility." *Id.* at 1207. After announcing its vaccination requirement, PeaceHealth received exemption requests from more than 800 employees nationwide. PeaceHealth reasonably determined that for employees who provide direct patient care, and for employees who interact with other employees who provide patient care, vaccination against COVID-19 was critical due to its efficacy in reducing infection transmission. Given its reasoned determination, PeaceHealth was not required to provide individualized assessments of each of the hundreds of requests it received beyond determining whether each employee could perform his job remotely.

*Combs v. Peacehealth, Inc.*, 2026 WL 1978066, at *2 (9th Cir. July 8, 2026).

It is undisputed in this case that each Plaintiff could not perform their job duties fully remotely.[3] Under those undisputed facts, Defendant was not required to provide an individualized assessment because the undisputed expert evidence in this case establishes that any accommodation other than leave for employees falling into the roles Plaintiffs held would have imposed undue hardship on Defendant. It would have been futile to individually consider Plaintiffs' accommodation requests. *See Williams v. Legacy Health*, 174 F.4th 1201, 1207 (9th Cir. 2026) ("If no accommodation is possible without undue hardship, then consideration of a

---

[3] Although Plaintiff Pickens, unlike the other Plaintiffs, did not expressly admit this fact, she has identified no evidence to dispute it. Instead, her Declaration acknowledges that the essential functions of her role "were primarily performed at a workstation" and required certain "necessary systems and infrastructure." Pickens Decl. ¶ 5. Based on Plaintiff Pickens' Declaration along with PeaceHealth's submitted evidence, Le Decl. Ex. 24, the Court finds no genuine issue of fact that Plaintiff Pickens' role could not be performed fully remotely.

particular accommodation is an exercise in futility"). Accordingly, Defendant is entitled to summary judgment on Plaintiffs' federal and state religious discrimination claims based on a failure to accommodate their religious beliefs.

**I. Disparate Impact**

Plaintiffs also advance a disparate impact theory under federal and state law. To establish a disparate impact claim, a Plaintiff must "(1) show a significant disparate impact on a protected class or group; (2) identify the specific employment practices or selection criteria at issue; and (3) show a causal relationship between the challenged practices or criteria and the disparate impact." *Bolden-Hardge v. Off. of California State Controller*, 63 F.4th 1215, 1227 (9th Cir. 2023). "Once a plaintiff has established a prima facie case of disparate impact, the employer may defend by demonstrating that its policy or practice is 'job related for the position in question and consistent with business necessity.'" *Ricci v. DeStefano*, 557 U.S. 557, 129 S. Ct. 2658, 2661, 174 L. Ed. 2d 490 (2009). If the employer can meet that burden, "a plaintiff may still succeed by showing that the employer refuses to adopt an available alternative employment practice that has less disparate impact and serves the employer's legitimate needs." *Id.*

Defendant argues that it is entitled to summary judgment on this claim because, even if Plaintiffs could establish a prima facie case of disparate impact, Defendant has established its business necessity defense a matter of law. Plaintiffs and Defendant appear to agree that, in the context of this case, the arguments and facts supporting Defendant's business necessity defense are functionally identical to those supporting Defendant's undue hardship defense and that the outcome of summary judgment on the undue hardship defense is dispositive of the business necessity defense as well. *See* Pls.' Resp. 24-25; Def.'s Mot. 41-42. The Court likewise agrees. For the same reasons the Court found no genuine issue of fact that allowing unvaccinated employees in Plaintiffs' roles would have imposed an undue hardship on Defendant, the Court

likewise finds no genuine issue of fact that Defendant's COVID-19 vaccination policy was consistent with business necessity and there were no available alternatives to serve Defendant's legitimate needs to protect its patients, other employees, and ability to provide healthcare. Defendant is entitled to summary judgment on Plaintiffs' disparate impact claims.

**CONCLUSION**

For the reasons discussed above, Defendant's Consolidated Phase One Motion for Summary Judgment (ECF No. 124 in 6:23-cv-01718-MTK; ECF No. 50 in 6:23-cv-01460-MTK) is GRANTED.

DATED this 28th day of August 2026.

MUSTAFA T. KASUBHAI (he/him)
United States District Judge